**Federal Defenders**
OF NEW YORK, INC.

Southern District
52 Duane Street, 10th Floor
New York, NY 10007
Tel: (212) 417-8700 Fax: (212) 571-0392

DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 9/24/2025

Tamara Giwa
*Executive Director*

Jennifer L. Brown
*Attorney-in-Charge*
Southern District

August 7, 2025

**BY ECF**



Hon. Valeria E. Caproni
United States District Judge
Southern District of New York
New York, NY 10007

Re:  United States v. Octavio Goenaga, 18-cr-840 (VEC)

Honorable Judge Caproni:

With the support of Mr. Goenaga's supervising probation officer, Robert Harris, I write to request early termination of Octavio Goenaga's supervised release.[1] As of the writing of this letter, Mr. Goenaga has completed nearly six years of his seven-year term of supervision. While his supervisory term has not been without blemish, his performance over the last five years demonstrates that the need for further supervision has run its course. Since Mr. Goenaga's health issues affect his ability to work, he supports himself with SSI. He has finally secured housing that meets his needs and is looking towards the future. His exemplary conduct shows that he no longer requires the rehabilitation and reintegration services that supervised release provides. Accordingly, Mr. Goenaga respectfully asks the Court to grant his motion for early termination of his supervised release.

**I. Background**

On December 19, 2019, Mr. Goenaga received a sentence of time served plus 48 hours after pleading guilty to one count of conspiracy to distribute oxycodone (21 U.S.C. § 846). He was sentenced to seven years of supervised release, at least two of which were to be spent in a substance abuse treatment program. In August of 2020—less than a year after entering the program—Mr. Goenaga received a VOSR for a COVID-related altercation. This Court graciously allowed him to return to and

---

[1] Defense Counsel has reached out to the Government and asked for their position on Mr. Goenaga's early termination motion. As of the date of filing, the Prosecution has not provided an answer in response to the inquiry.

1

**Federal Defenders**
OF NEW YORK, INC.

Southern District
52 Duane Street, 10th Floor
New York, NY 10007
Tel: (212) 417-8700 Fax: (212) 571-0392

Tamara Giwa
*Executive Director*

Jennifer L. Brown
*Attorney-in-Charge*

complete the program. To this day, Mr. Goenaga has not incurred any additional VOSRs.

After his release into the community, Mr. Goenaga found stable housing in the Bronx through The Jewish Board Supportive Housing program. For the first time in his life, he has an apartment of his own and is responsible for paying bills. As part of the program, Mr. Goenaga receives on-site mental health programming and support. He has benefited from this programming tremendously; taking his medications daily and practicing healthy coping mechanisms has helped him successfully manage his stress and anxiety.

Mr. Goenaga is also focused on addressing his physical health issues. Having recently turned 60, he has found that his age is catching up to him. In 2005, Mr. Goenaga suffered from a heart attack, resulting in a loss of 18% of his heart function. To date, he has had two stents and will likely need additional ones. To make matters worse, Mr. Goenaga is also diabetic, which has contributed to cataracts, glaucoma, and neuropathy. He also has high blood pressure and high cholesterol; both are being addressed through medications. Lastly, he has chronic knee pain and needs a replacement; however, he must get his blood sugar under control prior to having the surgery. These ailments have rendered Mr. Goenaga unable to work for the time being, so he relies on his monthly SSI check to make ends meet. Despite dealing with the stress of health issues and frequent doctor's visits, Mr. Goenaga has remained compliant with the conditions of his supervised release.

## II.   Legal Standard

"Congress intended supervised release to assist individuals in their transition to community life. Supervised release fulfills rehabilitative ends, distinct from those served by incarceration." *United States v. Johnson*, 529 U.S. 53, 59 (2000). When determining whether to grant an application, the Court is instructed to "consider 'the factors set forth in [18 U.S.C.] §§ 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7)." *United States v. Harris*, 689 F. Supp. 2d 692, 694 (S.D.N.Y. 2010) (quoting 18 U.S.C. § 3583(e)); *see also* United States District Court for the Southern District of New York Probation Office, Early Termination from Supervision (Aug. 2018) ("[§] 3583(e)(1) does not require 'exceptional conduct' to justify early termination. Instead, a court must simply be satisfied that the

**Federal Defenders**
OF NEW YORK, INC.

Southern District
52 Duane Street, 10th Floor
New York, NY 10007
Tel: (212) 417-8700 Fax: (212) 571-0392

Tamara Giwa
*Executive Director*

Jennifer L. Brown
*Attorney-in-Charge*

termination is warranted and is in the interest of justice."). The very same list of factors also applies to courts deciding whether to revoke or terminate supervision. *Esteras v. United States*, 606 U.S. 2036, 2039 n.3 (2025). Section 3583(e) gives the Court authority to terminate supervision at any time after the expiration of one year, if such action is "warranted by the conduct of the defendant released and the interests of justice." 18 U.S.C. § 3583(e).[2]

Missing from that list is § 3553(a)(2)(A): the need for a sentence to "reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." In other words, Congress left out the "retributive purposes of sentencing." *Esteras*, 606 U.S. at 2039. According to the Supreme Court, this omission by Congress was deliberate: ". . .[A] court may *not* take account of retribution (the first purpose listed in § 3553(a)(2)) when imposing a term of supervised release." *Tapia v. United States*, 564 U.S. 319, 326 (2011) (emphasis in original). In a recent opinion, the Supreme Court doubled down on its holding in *Tapia*. "Congress's decision to enumerate most of the sentencing factors while omitting § 3553(a)(2)(A) raises a strong inference that courts may *not* consider that factor when deciding whether to revoke a term of supervised release." *Esteras*, 606 U.S. at 2037 (emphasis added). Thus, a district court deciding whether to impose, modify, or revoke a term of supervised release, cannot consider "the need…to provide just punishment for an offense." 18 U.S.C. § 3553(a)(2)(A); *see* 18 U.S.C. § 3583(e).

The Supreme Court's reference to the omission of retribution in *Tapia* and *Esteras* duly aligns with the Sentencing Commission's stance. The Commission has noted that post-sentencing rehabilitative efforts "may provide a basis for early termination of supervised release under 18 U.S.C. § 3583(e)(1)." U.S.S.G. § 5K2.19.

---

[2] The United States Sentencing Commission has recently adopted amendments to the Sentencing Guidelines regarding supervised release. Notably, it added a new policy statement at §5D1.4 (Modification, Early Termination, and Extension of Supervised Release (Policy Statement). This new policy statement encourages a court, as soon as practicable after a defendant's release from imprisonment, to assess whether to modify the conditions of their supervised relief. Additionally, after defendants complete one year, it encourages courts to terminate the remaining term of supervision. Courts may discharge the defendant if, following consultation with the government and the probation officer, it determines that that the termination is warranted by the defendant's conduct and the interests of justice.

3

**Federal Defenders**
OF NEW YORK, INC.

Southern District
52 Duane Street, 10th Floor
New York, NY 10007
Tel: (212) 417-8700 Fax: (212) 571-0392

Tamara Giwa
*Executive Director*

Jennifer L. Brown
*Attorney-in-Charge*

Many courts have noted the rehabilitative purposes of supervised release. The Supreme Court has indicated that, "[s]upervised release, in contrast to probation, is not a punishment in lieu of incarceration." *United States v. Granderson*, 511 U.S. 39, 50 (1994). The Court further elaborated that supervision is meant "to assist individuals in their transition to community life. Supervised release fulfills rehabilitative ends, distinct from those served by incarceration." *United States v. Johnson*, 529 U.S. 53, 60 (2000). The Court then used this rationale to hold that prison time and supervised release are not "interchangeable." *Id.* at 60. This sharp distinction between supervised release and incarceration illustrates the rehabilitative, and not punitive, purpose of supervised release.

The Second Circuit has also clearly established the rehabilitative purpose of supervised release:

> Supervised release was established by the Sentencing Reform Act of 1984, as amended, 18 U.S.C. § 3551 et seq., and was designed "to ease the defendant's transition into the community after the service of a long prison term for a particularly serious offense, or to provide rehabilitation to a defendant who has spent a fairly short period in prison for punishment or other purposes but still needs supervision and training programs after release." Supervised release is not, fundamentally, part of the punishment; rather, its focus is rehabilitation.

*United States v. Aldeen*, 792 F.3d 247, 252 (2d Cir. 2015) (citations omitted). District courts in this circuit have noted that "[t]he purpose of federal supervised release is to assist people who have served prison terms with rehabilitation and reintegration into the law-abiding community." *United States v. Trotter*, 321 F. Supp. 3d 337, 339 (E.D.N.Y. 2018). *Trotter* makes clear that "[s]upervised release is designed to assist with rehabilitation, not to punish" and notes that courts are directed by Congress, in most cases, "to determine which defendants would benefit from the rehabilitative purposes of supervised release." *Id.* at 345. Those who no longer need the rehabilitative purposes of supervised release, then qualify for early termination.

**Federal Defenders**
OF NEW YORK, INC.

Southern District
52 Duane Street, 10th Floor
New York, NY 10007
Tel: (212) 417-8700 Fax: (212) 571-0392

Tamara Giwa
*Executive Director*

Jennifer L. Brown
*Attorney-in-Charge*

### III. The Interests of Justice and Mr. Goenaga's Conduct While on Supervision Warrant Early Termination of His Supervised Release

Mr. Goenaga had a very difficult upbringing. Not only did he grow up in poverty, but he was also abused by his stepfather. To make matters worse, he was sexually assaulted as a child. Mr. Goenaga is very remorseful for the actions that led to his previous incarceration. He takes responsibility for his faults and is "grateful [he has] been given the opportunity to do so." Letter of Octavio Goenaga, attached as Exhibit A. Despite the odds, Mr. Goenaga has chosen to learn from his past and move beyond it. Everything he has achieved today is a testament to his hard work, tenacity, and steadfast commitment to improving his life. Early termination would allow Mr. Goenaga to continue his path towards "the 'American dream.'" Letter of Octavio Goenaga, attached as Exhibit A.

Mr. Goenaga has a village of support. Since his release, he has strengthened relationships with family—particularly his brother, sister, niece, and cousin. Mr. Goenaga's family means everything to him; he knows that as long as he's doing the right thing, they will stick by his side. As he has no children of his own, he takes pride in being an active uncle to his ten nieces and nephews. Mr. Goenaga's family visits his home and takes him on family outings to go shopping or to the water park. They also send him books to read. Mr. Goenaga was raised as a Christian and has recently reconnected with his faith with the help of his cousin and spiritual advisor, Jessica Camacho. Additionally, his home health aide visits daily and assists Mr. Goenaga with day-to-day tasks, as his neuropathy can make it difficult to hold things. According to him, she is a great cook and like a "second mom" to him. Letter of Octavio Goenaga, attached as Exhibit A. P.O. Harris is also part of his support system; in fact, he encouraged Mr. Goenaga to apply for early termination and reached out to our office with Mr. Goenaga to obtain counsel to assist him with the instant motion. In other words, Mr. Goenaga is surrounded by a community of people who want to see him succeed.

Mr. Goenaga hopes to receive early termination so that he can locate his father, Octavio Goenaga Sr. Although not yet diagnosed with dementia, Mr. Goenaga's father had begun to display some cognitive deficits. Last he knew, family had placed his father into an unknown senior care facility. Because of restrictions under supervision, Mr. Goenaga has been unable to travel to locate his father. As

**Federal Defenders**
OF NEW YORK, INC.

Southern District
52 Duane Street, 10th Floor
New York, NY 10007
Tel: (212) 417-8700 Fax: (212) 571-0392

Tamara Giwa
*Executive Director*

Jennifer L. Brown
*Attorney-in-Charge*

his father is nearly 90, time is of the essence. Mr. Goenaga would like to be able to look for his father with a clear conscience—without having to worry about violating supervised release.

Additionally, Mr. Goenaga has several goals he hopes to achieve. He appreciates his SSI earnings, but once his health improves, he would like to work towards restarting his business. Previously, he was known as the "Furniture Guy" and people hired him to help with furniture disposal and removal. He even had a team of employees, whom he paid for their efforts. Although renting his first apartment was an important step, Mr. Goenaga doesn't plan on stopping there. He hopes to eventually buy a house, a car, and achieve the "American dream"; restarting his business would help him fund these goals. Early termination would give Mr. Goenaga the freedom to make his dreams into reality, without any onerous reporting requirements.

Early termination of supervised release is a mechanism that courts in this district have employed to terminate unnecessarily lengthy terms of supervised release for individuals who have accomplished the rehabilitative purposes that supervised release was intended to serve. *See, e.g.*, *United States v. Cruz*, 19 Cr. 770 (JMF) (S.D.N.Y. 2025) (granting early termination of supervised release); *United States v. Cohen*, 23 Cr. 134 (VSB) (S.D.N.Y. 2025) (same); *United States v. Bonilla Acevedo*, 17 Cr. 604 (CM) (S.D.N.Y. 2025) (same); *United States v. Smith*, 20 Cr. 244 (LJL) (S.D.N.Y. 2025) (same); *United States v. Mangual*, 23 Cr. 429 (JGK) (S.D.N.Y. 2024) (same); *United States v. Grullon*, 23 Cr. 106 (PGG) (S.D.N.Y. 2023) (same); *United States v. Zavala*, 18 Cr. 735 (KPF) (S.D.N.Y. 2023) (same); *United States v. Enriquez*, 20 Cr. 455 (RA) (S.D.N.Y. 2023) (same); *United States v. Pina*, 22 Cr. 27 (VSB) (S.D.N.Y. 2023) (same); *United States v. Misulovin*, 22 Cr. 592 (RA) (S.D.N.Y. 2023) (same); *United States v. Rosario*, 11 Cr. 932 (PGG) (S.D.N.Y. 2023) (same); *United States v. Bills*, 09 Cr. 507 (KMW) (S.D.N.Y. 2023) (same); *United States v. Sam*, 16 Cr. 184 (JGK) (S.D.N.Y. 2018) (same); *United States v. Cummings*, 06 Cr. 481 (JGK) (S.D.N.Y. 2017) (same); *United States v. Bethea*, 05 Cr. 1234 (DC) (S.D.N.Y. 2015) (same); *see also United States v. Young*, 20 Cr. 201 (KMW) (S.D.N.Y. 2024) (terminating probation early). Other districts within this Circuit have similarly recognized the psychological toll of supervision, acknowledging the "significance to defendants of 'being off the papers' and becoming

**Federal Defenders**
**OF NEW YORK, INC.**

Southern District
52 Duane Street, 10th Floor
New York, NY 10007
Tel: (212) 417-8700 Fax: (212) 571-0392

---

Tamara Giwa
*Executive Director*

Jennifer L. Brown
*Attorney-in-Charge*

---

one's own person without reporting requirements and without having to request permission to engage in travel or other activities. Thus, terminating supervision, i.e., 'the papers,' represents a form of freedom . . . ." *United States v. Roman et al.*, 06 Cr. 268-26 (JBA) (D. Conn. Jan. 4, 2023), Order Granting Defendant's Motion for Early Termination of Supervised Release at 2. Here, it would afford Mr. Goenaga the benefit of travelling freely to locate his father. It would also allow him the space to achieve the goals he has set for himself.

Early termination of supervision is important to "reward [a defendant's] determination to lead a responsible life and the success he has already realized," as it also "remind[s] others that such laudable progress is possible and will reap rewards." *United States v. Jiminez*, 2021 WL 535208 (E.D.N.Y. Feb. 12, 2021). Despite enduring a rough start to life, Mr. Goenaga has shown that he is determined to rise above his circumstances. His story is a testament to the fact that everyone deserves a second chance. In addition to rewarding Mr. Goenaga for his successful supervisory term, terminating his supervision would meaningfully send a message to other defendants on supervision—that early termination of supervision is possible with hard work and full compliance.

### IV. Conclusion

Mr. Goenaga's performance on supervision, his eye towards the future, and support from people close to him demonstrate that he has successfully reintegrated into the community. Mr. Goenaga's remaining term of supervision is his one and only tie to his past life. Consistent with Probation's position, given the progress Mr. Goenaga has made for nearly five years, early termination of his supervised release is warranted and in the interest of justice.

Thank you for your time and attention to this matter.

Respectfully Submitted,

*/s/ Marisa K. Cabrera*

Marisa K. Cabrera, Esq.
Assistant Federal Defender
Tel.: (212) 417-8730

7

Application GRANTED.  The Court is pleased to hear of the progress Mr. Goenaga has made and the support he continues to receive.  Pursuant to 18 U.S.C. § 3583(e), the Court may terminate supervised release if, after consideration of several of the factors set forth in 18 U.S.C. § 3553(a), the Court finds termination is warranted by the defendant's conduct and the interest of justice.  18 U.S.C. § 3583(e).  Mr. Goenaga's application makes clear that early termination of supervised release would serve the interest of justice.  As the Court explained at sentencing, Mr. Goenaga's offense conduct was rooted in his own history of addiction.  His efforts to address his addiction and in complying with the terms of supervised release in general demonstrate that supervised release has served the goal of Mr. Goenaga's rehabilitation and that further supervision is unnecessary.

The Court wishes Mr. Goenaga all the best as he continues on the path he began on supervision.  At sentencing, the Court informed Mr. Goenaga that it was "taking a big chance" in sentencing him to time served and a term of supervised release.  Evidently, that chance paid off.  It is the Court's sincere hope and belief that taking another chance on Mr. Goenaga will result in him being a productive and prosocial member of society, provided Mr. Goenaga continues to work towards that goal.

Mr. Goenaga's term of supervised release is hereby terminated.

SO ORDERED.

*[Signature: Valerie Caproni]*   9/24/2025

HON. VALERIE CAPRONI
UNITED STATES DISTRICT JUDGE